**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERT B.,[1]                                                    Case No. 3:22-cv-246

        Plaintiff,                                          Newman, J.

    v.                                                              Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Robert B. filed this Social Security appeal to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review. As explained below, the undersigned recommends that the Defendant's non-disability decision be REVERSED because it is not supported by substantial evidence in the record as a whole.

**I.  Summary of Administrative Record**

On September 1, 2020, Plaintiff filed new applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning on June 2, 2008 based upon mental conditions including bipolar disorder, depression, ADHD, paranoia and a learning disability, as well as physical conditions including gout, HTN, Neuropathy, diabetes, muscle spasms, and chronic back pain. (Tr. 73, 228).[2] After Plaintiff's claims were denied initially and on reconsideration, Plaintiff

---

[1] Because of significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The record reflects that Plaintiff filed prior DIB and SSI applications that were denied initially in 2007 and on reconsideration in 2009, as well as another application that was denied initially in 2016. (Tr. 73).

requested an evidentiary hearing. On September 2, 2021, Plaintiff appeared telephonically with counsel and testified before Administrative Law Judge ("ALJ") Gregory Beatty. A vocational expert also testified. (Tr. 43-71). During the hearing, Plaintiff amended his alleged onset date to September 1, 2020, effectively waiving his DIB claim, for which his date last insured was March 31, 2009. (Tr. 50-51). On November 17, 2021, the ALJ issued an adverse decision that formally dismissed his DIB claim and denied his remaining SSI claim.[3] (Tr. 24-37).

Plaintiff has a limited 11th grade education and was 47 years old, still a "younger individual" at the time of the ALJ's decision.[4] (*See* Tr. 27). He has no past relevant work.[5] The ALJ states that he is 5' 11" and weighs 317 pounds (Tr. 27).[6] (Tr. 51). He lives with an adult son who recently moved in with him and helps with cooking and cleaning, and relies on financial support from his children. (Tr. 52.) His mother and a daughter take him to the grocery store. (Tr. 62). He has a driver's license that was recently reinstated after being suspending for nonpayment of child support, but does not own a vehicle. (Tr. 53).

In his decision, the ALJ determined that Plaintiff has the following severe impairments: "essential hypertension, diabetes mellitus, gastrointestinal disorder, peripheral neuropathy, osteoarthritis, and lumbar and cervical degenerative disc disease." (Tr. 27). Yet despite recognizing a "mental health aspect" to Plaintiff's claim, the

---

[3]Plaintiff does not appeal the dismissal of his DIB claim. SSI benefits are payable only as of the month after the month of application. 20 C.F.R. § 416.335. Thus, the primary period at issue begins with Plaintiff's date of application in September 2020, as there can be no retroactivity of benefits under SSI. *Id.*

[4]The ALJ mistakenly states that Plaintiff was 34 on the alleged disability onset date. (Tr. 35). Plaintiff was 47 years old on his *amended* alleged onset date.

[5]The ALJ mistakenly states that Plaintiff has past relevant work, identifying the same three jobs that the VE testified an individual with Plaintiff's RFC could perform. (Tr. 27). It is clear from the record and from elsewhere in the ALJ's opinion that Plaintiff has no past relevant work. (Tr. 35, 54).

[6]The source of the ALJ's reference to Plaintiff's weight is unclear. Plaintiff testified that he weighs 263 pounds. (Tr. 51). The discrepancy appears to be irrelevant, however, because Plaintiff does not claim error based on the failure to discuss obesity.

ALJ found no "severe" mental health impairments, but rather, that his mental impairments "do not cause more than minimal limitation in his ability to perform basic mental work activities and are, therefore, nonsevere." (Tr. 30; *see also* Tr. 31). The ALJ found that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that he would be entitled to a presumption of disability. (Tr. 31)

The ALJ next determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, subject to the following non-exertional limitations based solely on his physical impairments:

> (1) occasionally climbing ramps and stairs, and ladders, ropes, and scaffolds; (2) no work at unprotected heights; (3) no concentrated exposure to moving mechanical parts and operating a motor vehicle.

(Tr. 32).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform jobs that exist in significant numbers in the national economy, including the representative positions of storage facility rental clerk, bench assembler, and hand packager. (Tr. 36). Therefore, the ALJ determined that Plaintiff was not under a disability through the date of his decision. (Tr. 37)  The Appeals Council denied Plaintiff's request for further review, leaving the ALJ's decision as the final decision of the Commissioner.

In his appeal to this Court, Plaintiff argues that the ALJ made four errors: (1) he failed to find Plaintiff's mental impairments to be "severe" and failed to include mental limitations in Plaintiff's RFC; (2) he failed to explain which inconsistent portions of the state agency psychological opinions he found to be "persuasive," particularly with regard to opinions about Plaintiff's ability to interact with others, and moderate limitations in other

Paragraph B areas; (3) he discounted Plaintiff's subjective complaints based on a lack of mental health treatment without considering Plaintiff's stated reasons for his lack of treatment; and (4) he failed to include the use of a cane or walker in the physical RFC. The undersigned finds reversible error related to the ALJ's analysis of Plaintiff's mental impairments.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity ("SGA"); at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe"; at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520(g), 404.1560(c), 416.920(g) and 416.960(c).

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §§ 404.1512(a); 416.912(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. *See* 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims of Error**

**1. Plaintiff's First Two Claims related to his Mental Impairments**

Because they are so closely related, the undersigned addresses Plaintiff's first two claims together. Plaintiff first argues that the ALJ erred when he determined that Plaintiff's mental health impairments were "nonsevere" and incorporated no mental limitations into Plaintiff's RFC. Second, Plaintiff asserts error in the ALJ's failure to explain which portions of the state agency psychological opinions he found to be "persuasive," particularly since the reviewing psychologists offered inconsistent opinions about Plaintiff's ability to interact with others, as well as moderate limitations in other Paragraph B areas. The undersigned agrees that the ALJ's analysis lacks substantial support in the record, and that remand for further development is required.

In general, a Plaintiff has the burden at Step 2 to establish first that he has medically determinable impairments, and second, the severity of each such impairment. Only "medically determinable" impairments are considered in formulating a claimant's RFC. To first prove that he has a medically determinable impairment (whether severe or nonsevere), a Plaintiff is required to show that he has an impairment resulting from

> anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 C.F.R. § 404.1521; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("to find a medically determinable mental impairment, …Paragraph A of each listing (except 12.05) includes the medical criteria that must be present in your medical evidence.").

6

Here, the ALJ determined that Plaintiff had established one or more "medically determinable" mental impairments based on historical treatment records that reflect a learning disability, ADHD, and a depressive disorder. (Tr. 28). Having determined that Plaintiff has several medically determinable mental impairments at Step 2, the ALJ was required to assess whether those impairments were severe or nonsevere. To evaluate severity, the ALJ assessed Plaintiff's degree of limitation under what are commonly known as the four functional "Paragraph B" areas. In all four areas, the ALJ found no more than "mild" limitations, meaning that Plaintiff did not meet or equal any mental health Listing at Step 3. (Tr. 30-31). The ALJ further concluded that Plaintiff's mental impairments were nonsevere, meaning they did not "cause more than minimal limitation in his ability to perform basic mental work activities " (Tr. 31). At Step 4, the ALJ declined to incorporate any mental limitations into Plaintiff's RFC.

The Defendant correctly points out that an ALJ's failure to find a particular impairment "severe" at Step 2 seldom provides grounds for reversal, so long as the ALJ has found at least one "severe" impairment and proceeded through the rest of the sequential analysis. *See, e.g.*, *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir.1987). But Plaintiff's argument is not limited to an assertion of Step 2 error alone. The record here arguably presents the rare case in which the ALJ's failure to address additional impairments at Step 2 led to other errors, the combination of which provides sufficient grounds for remand. *Accord Shiveley v. Comm'r of Soc. Sec.*, Case No. 1:13–cv–00788. 2014 WL 7653637 (S.D. Ohio, Dec. 22, 2014), adopted as supplemented at 2015 WL 248092 (S.D. Ohio Jan. 20, 2015).

To be fair, the evidence in support of any mental limitations within the amended (post-September 2020) disability period is underwhelming. In fact, the record reflects no

significant mental health treatment at all *during* the relevant period. Defendant therefore urges this Court not to remand because remand would be a "useless formality." (Doc. 11 at 8, PageID 1819). All the same, examination of the evidence on which the ALJ chiefly relied - the opinions of an examining agency psychologist and two non-examining reviewing psychologists – persuades the Court that remand for further development is necessary.

On January 16, 2021, Plaintiff appeared before Haley O'Connell, Psy.D., for a psychological examination. (Tr. 1719-1724). Dr. O'Connell described Plaintiff as "an uncooperative man with whom rapport was quite difficult to establish." (Tr. 1721). During the exam, Plaintiff reported that he is twice divorced and currently single. He reported having 18 adult-aged children, with whom he maintains relationships with "a couple." (Tr. 1720). He reported receiving special education services before leaving school after the 11th grade because of homelessness. (*Id*.) He reported involvement with the criminal justice system for Assault on two occasions, most recently more than 20 years ago. He reported a past diagnosis of "suicidal manic depressive bipolar disorder paranoid schizophrenia" through Day-Mont West, but refused to provide an estimate of the duration of his symptoms. He reported hallucinations, but refused to provide any examples or further information regarding such. (*Id*.) He reported psychiatric hospitalization in his 20's but did not know when he was most recently involved with individual therapy, refusing to estimate if it had been weeks, months, years, or decades ago. He stated he had been prescribed psychotropic medication, but did not know the name of the prescribing physician.

Dr. O'Connell observed that in addition to being generally uncooperative, Plaintiff "appeared to over-endorse his difficulties. He refused to elaborate on many topics when

asked to do so and he put forth limited effort on mental status items. He appeared to be poorly motivated." (Tr. 1722). Based on Dr. O'Connell's observations that Plaintiff was "not forthcoming" during the examination and the lack of relevant medical records, she declined to provide *any* opinions on Plaintiff's mental health diagnosis during the relevant disability period.

> Given the claimant's approach to the evaluation, including limited motivation, vague responses, and apparent exaggeration of difficulties, it is difficult to assign a DSM-5 diagnosis within a reasonable degree of psychological certainty. As such, no DSM-5 diagnoses are offered at this time.

(Tr. 1723). Dr. O'Connell also offered the following opinion:

> Mr. Brent reported unusual diagnoses without reporting accompanying symptoms. He was not forthcoming in discussing his mental health history and no recent medical records were provided. He appeared to be an unreliable historian.

(Tr. 1723).

Even with no current formal diagnoses, Dr. O'Connell opined with respect to Plaintiff's RFC that a record that reflected a diagnosis of Psychotic Disorder NOS suggested "a history of psychotic symptomatology which can interfere with attention and concentration." (Tr. 1724). Based on Plaintiff's uncooperative conduct, irritability, and poor frustration tolerance during the clinical interview and as well as his reported history of "significant anger control difficulties and ongoing problems relating to others," Dr. O'Connell further concluded that Plaintiff "would likely have difficulty relating to others in a workplace setting" and that he "is likely to respond poorly to pressures in a work setting." (*Id.*)

Upon initial consideration, agency reviewing psychologist Carl Tishler, Ph.D., reviewed Dr. O'Connell's report as well as other evidence of record, and opined that Plaintiff's Learning Disorder and ADHD were medically determinable "severe"

9

impairments, but that his alleged depressive, bipolar disorder was "nonsevere." (Tr. 76). Dr. Tishler next reviewed the "Paragraph B" criteria, and assessed Plaintiff with "moderate" limitations in three areas: (1) his ability to understand, remember or apply information; (2) his ability to interact with others; and (3) his ability to concentrate, persist or maintain pace. (Tr. 77). By contrast, Dr. Tishler found no limitation in Plaintiff's ability to adapt or manage himself. (*Id.*)

In more specific mental RFC opinions, Dr. Tishler opined that Plaintiff would be "moderately limited" in his ability to understand and remember detailed instructions, in his ability to carry out detailed instructions, in his ability to sustain an ordinary routine without special supervision, in the ability to work in coordination with or in proximity to others without being distracted by them, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 81). Dr. Tishler added that Plaintiff would be moderately limited in his ability to interact appropriately with the public, in his ability to accept instructions and respond appropriately to criticism from supervisors, in ability to get along with coworkers or peers, to respond to changes in the work setting, and to set realistic goals or make plans independently of others. (Tr. 81-82). Along with his RFC opinions, Dr. Tishler provided the following narrative summary:

> Will take pain pills and has had issues with narcotics in the past. U and M: Completed 11th grade and dropped out. Memory good at CE and recent TS notes but claimant reports that his memory is poor. BIF dx by examiner. Claimant can understand remember and complete simple and some moderately complex repetitive tasks. CPP: Claimant has worked at SGA in past. Claimant has current complaints of depression and psychosis but does not take medication. No severe hx of decompensation. claimant inconsistent in counseling. CE examiner opines *moderate impairment in stress tolerance* and no impairment for BIF tasks. TS rates GAF at 70 even though claimant complains of recent suicidal ideation and psychosis as his

ME presentation was with no more than mild impairment. Claimant *can complete tasks he is motivated to [perform] in environments without time or production pressure*. Social: Has been married. Has children with multiple mothers. Alleges violence towards others but corresponding reported criminal hx as he states that he was incarcerated once for 3 weeks for failure to pay child support or accessory to theft. Related adequately to examiner and *examiner opines moderate impairment. claimant can work in superficial social environments*. Adapt: Completed 11th grade and dropped out. BIF dx by examiner. Claimant *can understand remember and complete simple and some moderately complex repetitive tasks*. Weight to CE examiner's opinions. Claimant's allegations are no more than partially credible as he alleges many severe symptoms without any direct observation nor verifying hx such as psychosis, suicide ideation and violence.

(Tr. 82 (emphasis added)).

Oddly, Dr. Tishler's Psychiatric Review Technique (PRT) conclusions appear to conflict with the RFC opinions summarized above. In contrast to his findings of three mental "medically determinable impairments" including a learning disorder (severe), ADHD (severe), and depressive/bipolar disorder (nonsevere), for example, Dr. Tishler states in his PRT that "[t]here are *no mental medically determinable impairments established*." (Tr. 77, 89). In the same PRT, and again in contrast his earlier opinions about Plaintiff's multiple moderate limitations, Dr. Tishler concluded: "No significant limitations." (*Id.*)

On May 5, 2021 at the reconsideration level, agency psychologist Kristin Haskins, Psy.D reviewed Plaintiff's records and found that Plaintiff had established two medically determinable impairments: "Depressive, Bipolar and Related Disorders" and "Trauma and Stressor-Related Disorders." (Tr. 101). Dr. Haskins determined both mental impairments were nonsevere. Unlike Dr. Tishler, she identified neither Plaintiff's learning disorder or ADHD as medically determinable impairments and therefore evaluated neither condition as either "severe" or "nonsevere." Also unlike Dr. Tishler, Dr. Haskins did not evaluate the "Paragraph B" criteria for the two medically determinable impairments that she found. (Tr.

11

101). Dr. Haskins explains that she found the opinion of Dr. O'Connell to be "generally consistent with and supported by the objective exam findings," suggesting agreement with Dr. O'Connell's opinions about Plaintiff's social interaction limitations and stress tolerance. On the other hand, Dr. Haskins offered a PRT that is identical to the PRT offered by Dr. Tishler, meaning it is also internally inconsistent with her earlier opinions. Thus, in contrast to her finding of two nonsevere medically determinable mental impairments, Dr. Haskins concludes in her PRT that "[t]here are *no mental medically determinable impairments established*." (Tr. 101 (emphasis added)). And despite endorsing: "No significant limitations" in her PRT, she offers this RFC opinion:

> He would likely have difficulty relating to others in a workplace setting as well. He demonstrated poor frustration tolerance and he is likely to respond poorly to pressures in a work setting as well.

(Tr. 102).

The ALJ reviewed  all three agency psychologists' opinions under regulations that took effect on March 27, 2017. The regulations clearly state that the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. 404.1520c(a). Instead, the ALJ is to consider and articulate "how persuasive" each medical opinion is. 20 C.F.R. 404.1520c(b). In determining the level of "persuasiveness," an ALJ must consider five factors, including (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion, *see* 20 C.F.R. 404.1520c(c)(1)-(5), but must explicitly discuss  only  supportability  and  consistency. *See*  20  C.F.R.  404.1520c(b)(2);  §

12

404.1520c(b)(2) (stating that the ALJ must "explain how [he/she] considered the supportability and consistency factors….").

In his review of the agency psychological opinions, the ALJ here acknowledged that Dr. O'Connell had concluded that Plaintiff "has a reduced stress tolerance and will likely have [ ] some degree of difficulty with attention and concentration," and "also may have difficulty relating to others in a workplace setting given his ongoing problems relating to others and his anger control problems." (Tr. 29). However, the ALJ discounted those social functioning RFC limitations as only "partially persuasive." The ALJ reasoned:

> [C]onsidering that she was unable to offer any diagnosis and in light of other mental status findings throughout treatment records (discussed in detail below),it seems the claimant was short-tempered during Dr. O'Connell's examination and that he does have some retained ability to calm down and relate in a more appropriate manner when motivated to do so showing that his propensity to be argumentative is well within his control rather than the result of an acute mental illness.

(Tr. 29).

In contrast to his less favorable assessment of Dr. O'Connell's opinions, the ALJ found the opinions of Drs. Tishler and Haskins to be "persuasive."

> Based on their review of the record under the claimant's Title XVI claim, including Dr. O'Connell's assessment, Carl Tishler, Ph.D. and Kristen Haskins, Psy.D. found that the claimant has no significant functional limitations resulting from any mental disorder (Exhibits 4A at 5 / 7A at 4). These assessments are persuasive as Drs. Tishler and Haskins' findings are consistent with objective medical evidence showing that despite significant allegations of social aversions, agoraphobia, suicidal ideation, paranoia, and memory loss (Exhibits 7A at 2-3 / 2F at 50), the claimant receives comparatively little mental health treatment and psychological symptoms do not significantly interfere with his day-to-day level of functioning. As such, I also find that the claimant's medically determinable mental impairments do not cause more than minimal limitation in his ability to perform basic mental work activities and are, therefore, nonsevere.

(Tr. 30).

The undersigned finds the ALJ's analysis of the psychological opinion evidence and subsequent mental RFC determination not to be substantially supported because it is impossible for this Court to discern whether the ALJ reviewed or considered the internal inconsistencies within and between Dr. Tishler's and Dr. Haskins' reports, or simply overlooked portions of their reports. Unlike the ALJ, Dr. Tishler found two mental impairments to be severe, even though he incongruently concluded in his PRT that Plaintiff had no medically determinable impairments at all (severe or nonsevere). Dr. Tishler also opined inconsistently both that Plaintiff has a number of moderate mental RFC limitations and (in the PRT) no limitations at all. Dr. Haskins found different medically determinable mental impairments than assessed by Dr. Tishler, but determined they were nonsevere. At the same time, she inconsistently stated in her PRT that Plaintiff's mental health impairments were not medically determinable. And she opined both that Plaintiff has social functioning limitations similar to those endorsed by Dr. O'Connell and (contradictorily in her PRT) no limitations at all.

While the ALJ found both consultants' opinions to be "persuasive," the ALJ's identification of several mental impairments as nonsevere is itself inconsistent with the opinions of both consultants, who identified the same impairments as "severe" (in Dr. Tishler's case) or identified somewhat different mental impairments (in Dr. Haskins' case). The ALJ's findings of "mild: limitations" in all four Paragraph B areas also differs without adequate explanation from Dr. Tishler's finding of moderate limitations in three of the four Paragraph B areas.[7] And the ALJ's determination that Plaintiff has no mental RFC

---

[7]Not only does the ALJ fail to address this significant difference, but he misrepresents the record by stating: "Nothing in the record, including the findings of the reviewing psychologists, indicates that the claimant has more than a mild limitation in [the functional area of interacting with others]." (Tr. 30).

limitations at all differs from the portion of Dr. Tishler's report that assessed many specific moderate limitations, as well as the portion that suggests limitations in social interactions.[8] If the ALJ had incorporated as persuasive the agency psychologists' RFC limitations in interacting with others or in Plaintiff's ability to maintain concentration, persistence, or pace, it is not clear that Plaintiff could perform the representative jobs to which the VE testified and on which the ALJ relied.

### 2. SSR 16-3p and the ALJ's Adverse Consistency Determination

The ALJ made an adverse consistency/credibility finding about Plaintiff's many subjective complaints. Plaintiff's third claim is that the ALJ erred by discounting Plaintiff's subjective complaints based partly on a lack of mental health treatment without fully considering Plaintiff's stated reasons for his lack of treatment, as required by SSR 16-3p.[9] SSR 16-3p states that where the frequency or extent of treatment is not comparable with the degree of subjective complaints, "[w]e will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*.

As for Plaintiff's alleged mental impairments, the ALJ stated: "[T]here is no indication of any concerted effort at treatment beyond antidepressant refills that are of

---

[8]At the time of their reports, all three agency psychologists were considering the relevant disability period as beginning in June 2008. Although the ALJ may well have viewed the much later (September 1, 2020) alleged onset date as significant, he did not refer to or discuss that distinction. The Court must review the ALJ's opinion as it is written. As written, the analysis is not substantially supported.

[9]SSR 16-3p refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (October 25, 2017). The elimination of the term "credibility" can be semantically awkward since the prior case law uses the catchphrase "credibility determination." Still the essence of the regulatory framework remains unchanged. *See Duty v. Comm'r of Soc. Sec.*, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

benefit" in the records dating from October 2007 through April 2021. (Tr. 28). The ALJ pointed out that the only psychological assessment of record was the 2021 consultation report by Dr. O'Connell. (*Id*.) The ALJ thoroughly discussed findings within Dr. O'Connell's report and other evidence (such as mental status findings throughout the record) that undermined Plaintiff's allegations of significant mental impairment, including Dr. O'Connell's findings that Plaintiff was "poorly motivated while over-endorsing his difficulties," evidence that he "was alert and fully-oriented and not confused," with "clear and logical" thought processes, clear, and understandable articulation, and a lack of thought content abnormalities. (Tr. 29). The ALJ concluded based in part on mental status findings that despite being "argumentative" and "short-tempered during Dr. O'Connell's examination," Plaintiff retained the "ability to calm down and relate in a more appropriate manner when motivated to do so…." (*Id*.)

While evaluating the opinions of Drs. Tishler and Haskins, the ALJ again emphasized Plaintiff's lack of mental health treatment: "[D]espite significant allegations of social aversions, agoraphobia, suicidal ideation, paranoia, and memory loss (Exhibits 7A at 2-3 / 2F at 50), the claimant receives comparatively little mental health treatment and psychological symptoms do not significantly interfere with his day-to-day level of functioning." (Tr. 30). The ALJ noted that one of the only records reflecting treatment was a routine visit to refill his antidepressant medication. (Tr. 28, citing Jan. 31, 2017 treatment note indicating Plaintiff had started on Zoloft for depression with improvement noted, but had not seen a psychiatrist).

But the ALJ's adverse finding was not based solely on inconsistencies between the lack of treatment and Plaintiff's subjectively reported mental health symptoms. The ALJ also noted significant evidence inconsistent with Plaintiff's physical complaints;

> [T[he extent of limitation alleged is largely unsubstantiated by convincing objective medical evidence or clinical findings. The claimant's documented physical symptoms no doubt limit his exertional capabilities at times …, but he has received little longitudinal treatment for his more prevalent knee and neuropathic pain complaints. Moreover, muscle strength testing and available imaging evidence as well as examination findings of normal muscle tone and bulk bilaterally … bely reports of leg and arm weakness so significant the claimant is unstable … and engages in little to no daily activity beyond playing video games. Regardless, neuropathy treatment is reportedly of some benefit …, and overall, pain has been "better managed" with the claimant's medication regimen without side effects.

(Tr. 35).

Plaintiff argues that the ALJ erred by failing to expressly discuss Plaintiff's testimony about his lack of mental health treatment. For instance, Plaintiff's counsel elicited testimony that Plaintiff started going to Day-Mont West for mental health treatment but that every time he found a psychiatrist that he liked, "they either find another job or quit." (Tr. 65). Plaintiff also testified that he had been looking for a new therapist since Day-Mont West closed,[10] but that most of the referrals he received were outside the Dayton area, and he lacks transportation to get there because he does not have a car and his kids work too much to take him to out-of-town appointments. (Tr. 63, 65). He testified that if counseling were available, he would want to go. (Tr. 66).

The Commissioner argues that substantial evidence supports the ALJ's subjective symptom analysis. The issue would not warrant remand standing alone. After all, the ALJ pointed out *numerous* inconsistencies beyond Plaintiff's lack of mental health treatment. However, because the ALJ's opinion does not reveal whether he considered Plaintiff's explanations for his lack of mental health treatment, and remand is required on other grounds, the ALJ should reconsider this issue.

---

[10]Public records indicate that the referenced facility closed at the end of 2017, nearly 3 years before Plaintiff's amended onset date.

### 3. The Evaluation of Plaintiff's Alleged Cane Use

Plaintiff's last claim of error accuses the ALJ of improperly evaluating his need for a cane or other assistive device. Plaintiff testified that he had been using a walker and a cane at home, and a cane when outside his home. (Tr. 57). He testified that he had received the walker from Miami Valley Hospital after falling, but that he did not need a prescription for the cane because he used his father's old cane. (Tr. 57-58).

Reviewing the record, the ALJ found no medical necessity for either a cane or walker during the relevant disability period. The ALJ noted the lack of objective and clinical evidence

> of any neurological dysfunction affecting the claimant's lower extremities: ultrasounds of the lower extremities have been negative…. X-rays of the bilateral knees, ankles, and feet have been largely unremarkable with mild to moderate degenerative changes …. Muscle strength testing in his lower extremities has consistently remained at 4-4+/5 or normal at 5/5.

(Tr. 27). The ALJ pointed out that the only prescription for an assistive device dated to an acute post-surgical period in April 2020, months before the alleged onset of disability:

> The claimant was discharged with a shower chair and front-wheel walker after an April 2020 hospitalization for a septic knee joint eventually requiring irrigation and debridement (Exhibit 1F at 76-78), but there is no indication this device was intended for use beyond a reasonable period of recovery from knee surgery (Exhibits 1F at 65 / 2F at 64). As discussed at Finding No. 2, the claimant is noted to ambulate with a straight cane throughout the record dating back to 2012 (Exhibit 1F at 429). Yet, again, there is no evidence this use is a medically necessity, and he can perform activities requiring fine and gross movements like grooming and hygiene and playing video games.

(Tr. 32). The ALJ therefore did not incorporate a cane or other assistive device into Plaintiff's physical RFC. Plaintiff now argues that use of a cane would have significantly eroded his ability to perform light work.

Despite the ALJ's failure to cite it, the Commissioner maintains that this Court should affirm the ALJ's failure to incorporate a cane based on Social Security Ruling

("SSR") 96-9p, which provides guidance for the evaluation of the use of any hand-held device and the effect of that use upon sedentary work. In relevant part, SSR 96-9p states:

> [T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, *and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)*. The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). Thus, SSR 96-9p requires a plaintiff to produce documentation that: (1) demonstrates that a cane has been prescribed; and (2) the reasons for that prescription. Countering the Commissioner's argument, however, Plaintiff asserts that SSR 96-9p applies on its face only when a plaintiff remains capable of <u>sedentary</u> work and not in cases like this one, in which the ALJ found him to be capable of <u>light</u> work. *See Scales v. Comm'r of Soc. Sec.*, Case No. 1:19-cv-03-MRB-KLL, 2020 WL 830964, at *8 (S.D. Ohio Feb. 20, 2020), adopted 2020 WL 1083638 (S.D. Ohio March 6, 2020) (suggesting that a plaintiff "need not produce the medical documentation set forth in SSR 96-9p" when the RFC is for light work rather than sedentary work).

Apart from the ALJ's failure to cite to SSR 96-9p, the Ruling's applicability to this case is arguably irrelevant because regulations that apply to *every case* make clear that it is Plaintiff's burden to prove his limitations, including his alleged need for a cane. *See* 20 C.F.R. § 416.912(a)(2) ("The evidence in your case record must be complete and detailed enough to allow us to make a determination…about whether you are disabled," including the "nature and severity of your impairment(s) for any period in question."). Here, Plaintiff's primary argument is that the record consistently documents his use of a

cane dating back to at least 2013, and that a year after his April 2020 surgery, his walker prescription was still listed as "Active." (Tr. 1742; *see also* Tr. 1751-52) (reporting that his legs were weak and that he had poor balance, with multiple falls).

However, a prescription for a cane alone is rarely (if ever) sufficient to satisfy a plaintiff's burden to show medical necessity. *See*, *e.g.*, *Carreon v. Massanari*, 51 Fed. Appx. 571, 575, 2002 WL 31654581, at *2 (6th Cir. 2002) (affirming determination that plaintiff could perform light work despite evidence that cane had been prescribed); *see also generally*, *Rodgers-Eaches v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-69-DRC-KLL 2021 WL 164254, at *8 (S.D. Ohio, 2021), adopted at 2022 WL 190043 (S.D. Ohio Jan. 21, 2022) ("Because plaintiff has not pointed to medical documentation in the record that shows her cane was medically required, any error the ALJ committed by failing to more thoroughly evaluate plaintiff's use of a cane was harmless error. "). Notwithstanding his relatively longstanding evidence of cane use, Plaintiff cites to no objective evidence or clinical findings during the relevant period in which any physician found any abnormalities that would support a finding that a cane is medically necessary.

In considering whether substantial evidence exists to uphold the ALJ's RFC determination that a cane was not required, the undersigned also considers the fact that the ALJ discussed the opinions of two agency physicians, Drs. Bolz and Siddiqui, who opined on October 31, 2020 and on May 2, 2021, respectively, that Plaintiff could perform a range of medium work (Bolz) or light work (Siddiqui). (Tr. 80, 102). Both exertional levels require standing and walking about 6 hours each during an 8-hour workday, and neither consulting physician found that Plaintiff required an assistive device. On the other hand, the ALJ expressly rejected Dr. Bolz's RFC opinions as "not persuasive" because Dr. Bolz "overestimates the claimant's physical capacity given evidence of his neuropathic pain,

20

spinal abnormalities and other degenerative changes throughout the lower extremities *resulting in occasions of positive straight leg raise and some restricted range of motion secondary to leg and back/neck pain.*" (Tr. 33 (emphasis added)). The ALJ's express rejection of Dr. Bolz's opinions based leg impairment, together with the ALJ's failure to explicitly refer to the lack of cane use found by either consultant, renders the Commissioner's argument that the ALJ *implicitly* relied on the consulting physicians' opinions somewhat unpersuasive.

Nevertheless, and considering the record as a whole (and even if substantial evidence might also exist to support cane use), the undersigned finds the ALJ's failure to include cane use to be substantially supported. The ALJ discounted Plaintiff's subjective report of cane use after expressly discussing the lack of objective evidence of abnormalities and after more generally discussing both reviewing agency physicians' RFC opinions. Plaintiff has failed to show that the evidence of historic cane use is sufficient, standing alone, to establish medical necessity during the disability period. S*ee Johnson v. Comm'r of Soc. Sec.,* 535 Fed. App. 498 508 (6th Cir. 2013) ("Because the ALJ found that the evidence did not suggest that Johnson needed a cane, it was not erroneous for the ALJ to exclude this factor in determining Johnson's RFC."). However, the ALJ remains free to reconsider this issue on remand if warranted.

### III.  Conclusion and Recommendation

A sentence four remand under 42 U.S.C. § 405(g) provides the required relief when there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Hum. Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may

order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Id*. at 176.

For the reasons stated, **IT IS RECOMMENDED THAT** the Commissioner's decision be **REVERSED** and that this matter be **REMANDED** under Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

22

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERT B.,                                          Case No. 3:22-cv-246

      Plaintiff,                                  Newman, J.
   v.                                                  Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Under Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections must specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party must respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).